# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0606-24
          A-0607-24

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

S.B. and K.K.,[1]

    Defendants-Appellants,

and

S.V.,

    Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
E.B., X.K., S.K., C.K.,
K.K., and L.K., minors.

_____

---

[1] We use initials and pseudonyms to protect the parties' privacy. R. 1:38-3(d)(12).

Submitted August 11, 2025 – Decided August 18, 2025

Before Judges Mayer and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0032-23.

Jennifer N. Sellitti, Public Defender, attorney for appellant S.B. in A-0606-24 (Deric Wu, Designated Counsel, on the briefs).

Jennifer N. Sellitti, Public Defender, attorney for appellant K.K. in A-0607-24 (Louis W. Skinner, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Lakshmi Barot, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor E.B. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Cory H. Cassar, Designated Counsel, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minors X.K., S.K., C.K., K.K., and L.K. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; David B. Valentin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In these appeals, consolidated for the purpose of issuing a single opinion, defendants S.B. (Sue) and K.K. (Ken) appeal from an October 11, 2024

judgment of guardianship terminating their parental rights. Sue and Ken are the biological parents of X.K. (Xander), born in 2011, S.K. (Sam), born in 2013, C.K. (Cam), born in 2014, K.K., Jr. (Kevin), born in 2016, and L.K. (Lou), born in 2019. S.V. (Steve) and Sue are the biological parents of E.B. (Ed), born in 2009.[2] We affirm for the reasons expressed by Judge Michael Antoniewicz in his comprehensive and thoughtful one-hundred-page written decision.

We summarize the facts from the five-day guardianship trial.

Between 2012 and 2014, plaintiff Division of Child Protection and Permanency (Division) removed Ed, Xander, Sam, and Cam from their mother's care due to her inadequate supervision of the children, mental health issues, drug use, and violation of an agreement not to live with Ken. The Division subsequently reunited the children with Sue. In 2016, Sue and the children moved to Louisiana to live with Ken. While living in Louisiana, Sue gave birth to Lou and Kevin.

In August 2020, Sue returned to New Jersey with all six children. Ken remained in Louisiana.

---

[2] Steve did not participate in the guardianship proceedings, resulting in the entry of default against him and termination of his parental rights to Ed. Nor did Steve participate in this appeal.

A-0606-24

The following month, the Division received a report that Sue failed to supervise the children while living in a shelter and allowed the children to act like "a pack of wild animals." The Division opened a new case and provided services to the family.

In March 2021, the Division obtained an order for the care and supervision of the children because Sue faced eviction from a shelter based on her failure to supervise the children and lacked a backup housing plan. In June 2022, the Division obtained custody of all six children based on reports that Sue refused to seek treatment for Ed after he threatened to kill himself.

Since its first involvement with the family, the Division expressed concern regarding Sue's mental health, inability to supervise and control the children, and lack of stable housing. According to Division employees who testified at the guardianship trial, Sue grew increasingly agitated and paranoid with the passage of time. Sue reported seeing demons, demanded her therapist diagnose the children with various conditions without any evidence the children suffered from such conditions, accused shelter workers of stealing her mail, and called the police to report birds were divulging her location.

4

Based on these behaviors, the Division's medical professionals diagnosed Sue with schizotypal personality disorder. However, Sue refused to seek the treatment recommended by the Division's medical evaluators.

The Division's trial witnesses told the judge the children were "almost feral in their behavior" while living with Sue. They further reported that Sue frequently left the children unattended. The Division's witnesses testified that the children fought, screamed, cursed, destroyed items, and climbed and jumped on furniture. Sue never corrected these behaviors. The Division's witnesses stated during supervised visits with the children that Sue participated in the children's disorderly actions and encouraged the children to ignore instructions from the Division's staff. Sue also engaged in inappropriate discussions with the children and allowed them to watch unsuitable graphic and violent videos. Although Ed attempted to parent his siblings because Sue failed to do so, the children ignored him.

As a result of Sue's inability to parent the children, the family repeatedly faced homelessness. The family was evicted from several shelters, hotels, and motels because the children flooded bathrooms, damaged furniture and appliances, climbed out windows, and played unsupervised in busy parking lots.

A-0606-24

Additionally, the family's living spaces were littered with dirt, trash, and discarded food.

The Division arranged for psychological evaluations of Sue, Ken, and the children. The children disclosed Ken was physically abusive to the family. The Division's evaluators concluded that Ed suffered from Post-Traumatic Stress Disorder and diagnosed the other children with Attention Deficit Hyperactivity Disorder, Oppositional Defiant Disorder, and learning disabilities. The same evaluators reported the children frequently failed to attend school and were required to repeat grade levels due to excessive absences.

Regarding Ken, as a result of his failure to provide updated contact information, the Division had difficulty finding and communicating with him about the litigation. Additionally, when the Division did get in contact with him, Ken screamed and cursed at Division workers, further complicating the Division's ability to keep him informed. Although the Division arranged for Ken to receive services in Louisiana, he refused to participate. Further, the Division scheduled a psychological evaluation for Ken in New Jersey and offered to facilitate a supervised visit with the children. However, Ken failed to attend the scheduled appointments.

6

In 2022, Ken stopped contacting the Division. The Division attempted to locate Ken, but he never responded. Nor was the Division able to obtain a new address and telephone number to contact Ken.

In late 2023, the Division learned Ken was incarcerated in Texas. According to information provided to the Division, Ken was arrested for child sexual assault, rape, and child pornography. Ken allegedly restrained, beat, and raped a child while the child was under his care. The Division discovered Ken was sentenced to a seven-year prison term in Texas on the sexual assault charge and had a trial date set for April 2024 on the child pornography charge.

The termination trial took place during May and June 2024. Dr. Barry Katz, three Division employees, and resource parents L.M. (Laura) and D.L. (Dee) testified on behalf of the Division. Neither Ken nor Sue testified or called any witnesses.

On October 11, 2024, after hearing the testimony proffered by the Division and considering the documents admitted into evidence, Judge Antoniewicz terminated Ken, Sue, and Steve's parental rights to the children. In his extensive and detailed written opinion, the judge found: (1) the children were harmed by Sue's inability to meet their needs and Ken's physical abuse; (2) neither Sue nor Ken had the ability or willingness to remedy the harms; (3) the

7

Division made reasonable efforts toward reunification, and no alternatives to termination existed; and (4) termination would not do more harm than good.

Having reviewed the record, we are satisfied Judge Antoniewicz thoroughly analyzed each prong under the best-interests test, N.J.S.A. 30:4C-15.1(a), and made sufficient findings of fact based on the clear and convincing evidence presented at trial. The judge found each of the Division's testifying witnesses credible based on his ability to see and hear those witnesses respond to questions during their direct and cross-examinations. He further concluded the Division's witnesses testified without hesitation or evasion and their testimony was consistent with the documents admitted as evidence during the trial.

As for Dr. Katz, who performed the psychological evaluations of Sue and Ken and the bonding evaluations between Sue and the children and the resource parents and the children, the judge cited extensively to the doctor's testimony in rendering the termination decision. The judge found Dr. Katz testified based on his own knowledge obtained through personal interactions with Sue, Ken, the resource parents, and the children. Judge Antoniewicz found the doctor's testimony "inherently believable" and "consistent with his report."

As for the resource parents, Laura and Dee, the judge also found their testimony credible. Laura testified she wanted to adopt Ed, Xander, Sam, Lou, and Kevin and understood the difference between kinship legal guardianship (KLG) and adoption. Laura explained her sister Dee would adopt Cam because the siblings did not get along with him and Cam rejected Laura's efforts to facilitate a relationship with his brothers and improve his behavior generally. According to Laura, when Cam stayed with her sister, the other five children got along better and there were no disruptions or issues. Laura planned to maintain Cam's relationship with his siblings even if Dee did not adopt him.

Dee testified that all six children referred to her as "aunt." Dee described Cam's behavioral issues and explained she was able to redirect his behavior while he lived with her. Dee also wanted to adopt Cam and understood the difference between adoption and KLG.

Under prong one, based on the unrefuted expert testimony proffered by Dr. Katz, Judge Antoniewicz properly found Sue and Ken endangered the health, safety, and development of the children. He concluded Sue and Ken were "unwilling to address their housing instability and their respective mental health issues and drug abuse issues which have placed [the] children in danger." Based on Dr. Katz's undisputed testimony, the judge concluded Sue "harmed the

9

A-0606-24

children by failing to adequately supervise them and meet their needs, including the needs of the children medically, educationally[,] and emotionally while the children were in her care." As for Ken, the judge explained he "caused harm to the children when the children resided with him and [Sue] and were exposed to extreme domestic violence caused primarily by [Ken]." Additionally, the judge found Sue failed to "alleviate the risk of harm her inaction and instability to care for the children caused" and "failed to seek any help for her oldest child, [Ed], when [Ed] expressed suicidal ideations." The judge determined the Division presented clear and convincing evidence that Sue's "mental health challenges, lack of stability[,] and lack of proper engagement with the children and the [recommended] serv[ic]es" harmed the children.

Under the second prong of the best-interests test, Judge Antoniewicz found Sue and Ken were unwilling or unable to eliminate the harm to the children and failed to provide a safe and stable home for them. The judge explained Sue failed to engage in the mental health therapy and other services recommended by the Division to eliminate harm to the children. As for Ken, the judge determined he "refused to engage in any services[,] . . . completely disengaged with any contact with the Division," and "became unable to provide a home for the children due to his engaging in anti-social and criminal behavior

10

which ultimately resulted in [his] incarceration." As the judge explained, Sue and Ken "demonstrated an erratic, unstable lifestyle without personal responsibility for their parenting shortcomings," which "pose[d] a significant risk to the children's health and safety."

As for the third prong regarding the Division's effort to provide services to the parents and consideration of alternatives to termination of parental rights, the judge explained the Division presented clear and convincing evidence of its efforts to offer services to the parents. Based on the testimony of the Division's witnesses, the judge found the Division offered numerous services to Sue, including "getting [her] into appropriate therapy, assisting with housing and transportation, referring [her] for parenting [skills], and trying multiple variations of parent-child visitation." He further determined "the Division attempted to provide substance abuse evaluations, substance abuse treatment, psychological evaluations, bon[d]ing evaluations, referrals for mental health treatment services[,] and . . . visitation" for Sue, but she frequently failed to participate in the offered services.

Regarding the Division's satisfaction of prong three of the best-interests test as to Ken, the judge concluded the Division met its burden of proof by clear and convincing evidence. Judge Antoniewicz found the Division made efforts

to engage Ken in services when "the Division knew where [Ken] was," but Ken "failed to keep the Division aware of where he was located."

Regarding the second part of the third prong of the best-interests test, alternatives to termination, Judge Antoniewicz concluded "[t]he Division made efforts to locate appropriate kinship resources for [the] children" and "worked tirelessly with the only kinship resource that was willing to be a placement until it became very clear that this placement was not in the children's best interests." The judge explained "[n]umerous relatives were explored and ultimately ruled out as placement options for the children. The children were placed in . . . appropriate and symbiotic resource homes with two sisters as caretakers." Further, the judge found "the Division advised and educated the respective resource parents about adoption and [KLG]" and explained the difference between KLG and adoption. Based on the credible testimony of the resource parents, the judge determined "they unequivocally and unwaveringly expressed their position that they were committed to adoption and that they [had] no desire for any other permanency plan."

Regarding prong four of the best-interests test, termination of parental rights would not do more harm than good, Judge Antoniewicz found the Division clearly and convincingly met its burden of proof. Based on the uncontroverted

12

testimony, the judge concluded the children did "not know any of the biological parents as . . . reliable parental figure[s]." As for Sue and Ken, the judge stated they were "not now nor in the foreseeable future . . . viable candidate[s] to parent these children." As for Steve, the biological father of Ed, the judge noted he "ha[d] never been present in [Ed]'s life" and there would "be no harm to [Ed] because severing a relationship between [Ed] and a virtually unknown person has no possibility of any harm to the child." The judge concluded terminating the parental rights of Sue, Ken, and Steve would "afford the children the permanency and stability they need[ed] and deserve[d] and will provide them with the best opportunity to develop into . . . emotionally healthy and productive adolescents and adults." Judge Antoniewicz found "the children deserve[d] the chance to establish permanency with competent, nurturing caretakers who [could] provide them with a safe and stable home."

In his written decision terminating the parental rights of Sue, Ken, and Steve, Judge Antoniewicz concluded the Division had satisfied each of the four prongs set forth in N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence and termination of parental rights was warranted. He memorialized his decision in an October 11, 2024 judgment of guardianship. Sue and Ken appealed. We consolidated the separate appeals in a November 1, 2024, order.

On appeal, Ken challenges the Division's satisfaction of all four prongs under N.J.S.A. 30:4C-15.1(a). He contends: (1) he did not harm the children; (2) he demonstrated his willingness to remedy any harm to the children by his receipt of treatment while in prison for his past abusive behavior; (3) the Division failed to provide services to assist in his reunification with the children, and the judge erred in concluding KLG was not an available alternative to termination; and (4) the judge conducted an improper "better off" analysis rather than considering the harm termination would cause. Ken also argues the testimony of the Division's expert, Dr. Katz, constituted an impermissible net opinion.

On appeal, Sue limits her challenge to the Division's failure to satisfy prongs three and four under N.J.S.A. 30:4C-15.1(a). Specifically, she argues: (1) the judge failed to consider alternatives to termination; and (2) the benefits of KLG under the circumstances outweighed any potential harm to the children.

Our scope of review from an order terminating parental rights is limited. N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007). We will uphold a trial judge's fact-findings if they are "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014).

We accord substantial deference to a trial judge's opportunity to observe witnesses firsthand and evaluate their credibility. Ibid. "Our general deference on appeal is also informed by the Family Part judge's 'feel of the case[,]'" N.J. Div. of Child Prot. & Perm. v. D.H., 469 N.J. Super. 107, 116 (App. Div. 2021) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)), and by the Family Part's "special expertise in matters related to the family." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012). Accordingly, we defer to the trial judge's factual findings "and uphold those findings if they are grounded in substantial and credible evidence in the record." N.J. Div. of Child Prot. & Perm. v. D.C.A., 256 N.J. 4, 19 (2023).

We will reverse a Family Part judge's decision on appeal only if the judge's findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)); see also N.J. Div. of Child Prot. & Perm. v. D.A., 477 N.J. Super. 63, 80 (App. Div. 2023). We review the trial judge's legal conclusions de novo. See R.G., 217 N.J. at 552; see also D.C.A., 256 N.J. at 19 (according no deference to the trial court's interpretation of N.J.S.A. 30:4C-15.1(a)).

"Children have their own rights, including the right to a permanent, safe and stable placement." N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004). Our courts acknowledge "the need for permanency of placements by placing limits on the time for a birth parent to correct conditions in anticipation of reuniting with the child." Ibid. At times, a parent's interest must yield to the State's obligation to protect children from harm. See N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 397 (2009).

When terminating parental rights, a Family Part judge must focus on the "best interests of the child standard" and determine whether the Division satisfied all four prongs under N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. In re Guardianship of K.H.O., 161 N.J. 337, 347-48 (1999); N.J. Div. of Child Prot. & Perm. v. D.H., 469 N.J. Super. 107, 114-15 (App. Div. 2021).

Under N.J.S.A. 30:4C-15.1(a), the Division must prove:

(1)    The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2)    The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;

(3)    The [D]ivision has made reasonable efforts to provide services to help the parent correct the

16

circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

After carefully reviewing the arguments presented by Sue and Ken, considering the trial evidence, and applying the applicable legal principles, we are satisfied there is no basis to disturb Judge Antoniewicz's well-reasoned decision terminating the parental rights of Sue, Ken, and Steve to all six children. There is no evidence in the record supporting Sue and Ken's arguments that the Division failed to present clear and convincing evidence in support of termination under prongs one and two of the best-interests test. In fact, Sue and Ken declined to present any evidence or testimony in opposition to the Division's application to terminate their parental rights.

Nor do we discern any support in the record for Ken's arguments that the Division failed to satisfy prongs three and four of the best-interests test. Judge Antoniewicz painstakingly detailed his reasons in support of the Division's satisfaction of all four prongs under N.J.S.A. 30:4C-15.1(a). We need not repeat the judge's comprehensive findings, which are amply supported by the record as set forth in his extensive one-hundred-page written decision.

We affirm the October 11, 2024 judgment for the reasons stated in Judge Antoniewicz's comprehensive written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0606-24